**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| SMILEDIRECTCLUB, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>CANDID CARE CO.,<br><br>        Defendants. | **Case No.: 6:20-CV-01115-ADA**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S**
**COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND ................................................................................................. 2

        A.      The Parties ............................................................................................... 2

        B.      The '522 Patent And The Prior Delaware Lawsuit ................................. 2

        C.      The '599 Patent And The Present Lawsuit ............................................. 4

III.    APPLICABLE LAW ........................................................................................... 5

        A.      Rule 12(b)(6) Standard ........................................................................... 5

        B.      Collateral Estoppel ................................................................................. 6

IV.     ARGUMENT ....................................................................................................... 8

        A.      Collateral Estoppel Bars SDC From Asserting At Least Claims 16-25
                Of The '599 Patent ................................................................................. 8

                1.      The § 101 Validity Issue Here Is Identical To The One
                        Adjudicated In The Delaware Lawsuit ....................................... 9

                2.      The § 101 Validity Issue Was Actually Litigated In The
                        Delaware Lawsuit ...................................................................... 16

                3.      The Determination Of The § 101 Validity Issue In The
                        Delaware Lawsuit Was A Necessary Part Of The Delaware
                        Court's Judgment ...................................................................... 17

        B.      SDC's Complaint Does Not Allege Infringement Of Claims 1-15
                Of The '599 Patent ................................................................................. 17

V.      CONCLUSION ................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Cases**

*Abbvie Inc. v. Kennedy Trust for Rheumatology Research*,
　No. 13 Civ. 1358 (PAC), 2014 WL 3360722 (S.D.N.Y. July 9, 2014) .................................... 14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
　573 U.S. 208 (2014) ......................................................................................................... 9

*Allen v. McCurry*,
　449 U.S. 90 (1980) ........................................................................................................... 6

*Allergan, Inc. v. Apotex, Inc.*,
　No. 1:14-CV-1028, 2015 WL 13358250 (M.D.N.C. Aug. 31, 2015) .................................. 8, 14

*Allergan, Inc. v. Sandoz, Inc.*,
　681 Fed. Appx. 955 (Fed. Cir. 2017) ................................................................................. 8

*Amgen, Inc. v. Genetics Inst., Inc.*,
　98 F.3d 1328 (Fed. Cir. 1996) ......................................................................................... 14

*Arunachalam v. Exxon Mobil Corp.*,
　No. 6:19-CV-00171-ADA, 2019 WL 10303695 (W.D. Tex. June 26, 2019) ...................... 7, 14

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ......................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ......................................................................................................... 5

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
　402 U.S. 313 (1971) ......................................................................................................... 6

*Bourns, Inc. v. United States*,
　537 F.2d 486 (Ct. Cl. 1976) ............................................................................................ 10

*Bradberry v. Jefferson County, Tex.*,
　732 F.3d 540 (5th Cir. 2013) ............................................................................................ 7

*Dana v. E.S. Originals, Inc.*,
　342 F.3d 1320 (Fed. Cir. 2003) ......................................................................................... 7

*De La Vega v. Microsoft Corp.*,
　Nos. W-19-CV-00612-ADA, W-19-CV-00617-ADA,
　2020 WL 3528411 (W.D. Tex. Feb. 7, 2020) ................................................................... 18

*DietGoal Innovations, LLC v. Chipotle Mexican Grill, Inc.*,
　70 F. Supp. 3d 808 (E.D. Tex. 2014) ................................................................................ 8

*Estech Sys., Inc. v. Regions Fin. Corp.*,
  No. 6:20-cv-00322-ADA, 2020 WL 6324321 (W.D. Tex. Oct. 28, 2020)............................ 18

*Fellowes, Inc. v. ACCO Brands Corp.*,
  2019 WL 1762910 (N.D. Ill. Apr. 22, 2019) ................................................................. 14

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  937 F.3d 1359 (Fed. Cir. 2019)................................................................................ 16

*Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*,
  Nos. 12-cv-6781 (RJS), 12-cv-7734 (RJS),
  2016 WL 5793745 (S.D.N.Y. Sept. 30, 2016) .................................................... 6, 14

*Kariuki v. Tarango*,
  709 F.3d 495 (5th Cir. 2013) .................................................................................... 7

*Mississippi Chem. Corp. v. Swift Agric. Chems. Corp.*,
  717 F.2d 1374 (Fed. Cir. 1983)................................................................................. 6

*NetSoc, LLC v. Oath Inc.*,
  No. 18-CV-12267 (RA), 2020 WL 419469 (S.D.N.Y. Jan. 24, 2020) ........... 6, 7, 10, 14, 15, 16

*Ohio Willow Wood Co. v. Alps South, LLC*,
  735 F.3d 1333 (Fed. Cir. 2013) ...................................................................... 6, 7, 13, 14

*Orenshteyn v. IBM, Corp.*,
  979 F. Supp. 2d 448 (S.D.N.Y. 2013).......................................................................... 14

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
  170 F.3d 1373 (Fed. Cir. 1999)............................................................................. 8, 17

*Prager v. El Paso Nat'l Bank*,
  417 F.2d 1111 (5th Cir. 1969) .................................................................................... 8

*RecoverEdge L.P. v. Pentecost*,
  44 F.3d 1284 (5th Cir. 1995) ..................................................................................... 7

*Rodriguez v. JPMorgan Chase Bank, N.A.*,
  No. SA-16-CV-410-XR, 2016 WL 4507388 (W.D. Tex. Aug. 26, 2016) ................................ 5

*Sheerin v. Davis*,
  3 F.3d 113 (5th Cir. 1993) ........................................................................................ 7

*SmileDirectClub, LLC v. Candid Care Co.*,
  No. 1:20-cv-00583-CFC (D. Del.)..................................................... 1, 2, 3, 4, 9, 10, 13, 16

*Speedfit LLC v. Chapco Inc.*,
  2020 WL 5633101 (E.D.N.Y. Sept. 21, 2020) .......................................................... 14

*Tyco Healthcare Group LP v. Applied Med. Res. Corp.*,
     No. 9:09-CV-176, 2013 WL 4757948 (E.D. Tex. Sept. 4, 2013) ........................................... 14

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 5

Fed. R. Evid. 201(c)(2) .................................................................................................... 5

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Candid Care Co. ("Candid") hereby moves to dismiss Plaintiff SmileDirectClub, LLC's ("SDC") complaint for infringement of U.S. Patent No. 10,861,599 ("the '599 patent").   The relevant claims of the '599 patent are in substance identical to the claims of its parent U.S. Patent No. 10,636,522 ("the '522 patent"), which the U.S. District Court for the District of Delaware recently held invalid for lack of subject-matter eligibility under 35 U.S.C. § 101.   *See SmileDirectClub, LLC v. Candid Care Co.*, D. Del. Case No. 1:20-cv-00583-CFC ("Delaware Lawsuit), D.I. 50 (Ex. 1).

Each of the Fifth Circuit's conditions for applying collateral estoppel is met.  **First**, the issue at stake here is identical to the one adjudicated in the Delaware Lawsuit.   In the Delaware Lawsuit, the court determined that all of the claims of the '522 patent are invalid under § 101 because they are directed to the abstract idea of "teleorthodontics," that is "having patients arrange for and receive dental aligners without ever seeing a dentist or orthodontist in person," and do not contain any inventive concept.  *Id.* at 15, 21-24.  The invalid '522 patent claims are in substance identical to the '599 patent claims asserted here, with any differences being superficial and immaterial to the issue of subject matter eligibility.   That this is so is evident from the words of the claims, and from SDC's own words, who told the Delaware court that the two patents have "very, very similar, if not identical claims."  Delaware Lawsuit, D.I. 29 (Ex. 2) at 12:5-18.

**Second**, the § 101 validity issue was actually litigated in the Delaware Lawsuit, with both parties having briefed the issue and presented arguments to the court.

**Third**, the Delaware court's determination that the '522 patent claims are invalid under § 101 was a necessary part of the court's judgment.  Indeed, it was the sole basis for dismissing SDC's complaint.

## II.   BACKGROUND

### A.   The Parties

SDC and Candid are competitors in the teleorthodontics business.  Both companies provide personalized clear aligners direct to consumers without requiring an in-person visit with a dentist or orthodontist.    The aligners are made for self-insertion by the consumer to straighten and reposition teeth.  Both parties offer consumers the ability to have intraoral scans of their mouths taken at various locations around the country.  SDC calls these locations "SmileShops"; Candid calls them "Studios."  The intraoral scans generate three-dimensional, digital representations of the consumer's mouth, which are used to create a personalized treatment plan and produce the aligners.

### B.   The '522 Patent And The Prior Delaware Lawsuit

On April 28, 2020, SDC obtained the '522 patent for its SmileShop concept. *See* '522 patent (Ex. 3) at cover page.  The '522 patent contains 30 claims, every one of which is directed to the abstract idea of "teleorthodontics," that is "having patients arrange for and receive dental aligners without ever seeing a dentist or orthodontist in person."  Delaware Lawsuit, D.I. 50 (Ex. 1) at 15.

On April 29, 2020, SDC filed the Delaware Lawsuit against Candid, asserting that Candid's Studio business model infringes the '522 patent.  *See* Delaware Lawsuit, D.I. 1.  Candid moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted because the claims of the '522 patent are invalid under 35 U.S.C. § 101 as directed to patent-ineligible subject matter.  *See* Delaware Lawsuit, D.I. 12, 13.  SDC opposed Candid's motion to dismiss.  *See* Delaware Lawsuit, D.I. 17.  After briefing on Candid's motion was closed, SDC submitted what it styled a "Notice of Supplemental Authority," to advise the court that the U.S. Patent and Trademark Office ("USPTO") had "issued a Notice of Allowance

for U.S. Patent Application No. 16,859,950 ('the '950 application'), which is a continuation of the patent-in-suit." Delaware Lawsuit, D.I. 21. This '950 application later would issue as the '599 patent, which is the subject of this lawsuit.

About six months after SDC filed the Delaware Lawsuit and while Candid's motion to dismiss was pending, SDC filed a motion for a preliminary injunction. *See* Delaware Lawsuit, D.I. 22. SDC argued the § 101 issue again in its supporting brief. *See* Delaware Lawsuit, D.I. 23 (Ex. 4) at 10-12. Among other things, SDC argued that the court should find the '522 patent claims eligible under § 101 because the USPTO "recently granted SDC's U.S. Application No. 16/859,950 ('the '950 application'), a continuation of the '522 patent that contains substantially similar claims to those asserted here." *Id.* at 11-12. SDC also represented to the Delaware court that it would be adding its new patent to the Delaware Lawsuit upon issuance, and argued that its plan to do so "further exemplif[ied] the need for an injunction." *Id.* at 12 n.1.

On November 4, 2020, the Delaware court held a telephonic hearing to discuss Candid's motion to dismiss and SDC's preliminary injunction motion. *See* Delaware Lawsuit, D.I. 29 (Ex. 2). The § 101 issue was argued at length during that conference. *See id.* at 6:10-8:18, 10:5-12:25, 14:15-19:4, 22:21-23:18, 24:9-26:21. At one point during the hearing , the court remarked that the '522 patent "is by far, of all the patents I have come across, the one that strikes me as suspect," and that it found it "really hard to understand how this patent is an allowed patent." *Id.* at 10:10-13. In defense of its patent, SDC again pointed to the USPTO's allowance of the '950 application, telling the court that the '522 patent and the '950 application have "very, very similar if not identical claims." *Id.* at 12:5-18.

On December 7, 2020, the Delaware court issued a detailed written opinion finding all of the '522 patent claims invalid under § 101. *See* Delaware Lawsuit, D.I. 50 (Ex. 1). The Delaware

court concluded that all of the '522 patent claims are directed to the abstract idea of "teleorthodontics," that is "having patients arrange for and receive dental aligners without ever seeing a dentist or orthodontist in person." *Id.* at 15.  Having determined that the claims are directed to an abstract idea, the court next searched the claims for an inventive concept and found none. *Id.* at 21-24.  The court found that the claims merely involve "routine scanning technology, generic computers, and routine communication technology" and a "conventional" manufacturing process. *Id.* at 22-23.  The court determined that it was appropriate to adjudicate the § 101 issue on a motion to dismiss, rejecting SDC's argument that fact discovery was required because "the patent itself explains that the technology used in the claimed workflow was routine or well-understood." *Id.* at 13.  The court also considered and rejected SDC's argument that claim construction was necessary to clarify the scope and meaning of the claims, finding that "SDC has not established that a claim construction issue affects the subject matter eligibility analysis." *Id.* at 13-14.  Accordingly, the court held all of the '522 patent claims invalid for lack of subject-matter eligibility under § 101 and on that basis dismissed SDC's complaint. *Id.* at 24; *see also* D.I. 51 (order dismissing the Delaware Lawsuit).

### C.    The '599 Patent And The Present Lawsuit

On December 8, 2020, the '950 application that SDC relied on during the Delaware Lawsuit issued as the '599 patent.  '599 patent (Ex. 5) at cover page.  The '599 patent claims, as described by SDC, are "very, very similar, if not identical," to the '522 patent claims that the Delaware court found invalid for lack of subject-matter eligibility under § 101.  Delaware Lawsuit, D.I. 29 (Ex. 2) at 12:5-18; *see also* Delaware Lawsuit, D.I. 23 (Ex. 4) at 11-12 ("The USPTO recently granted SDC's U.S. Application No. 16/859,950 ("the '950 application"), a continuation of the '522 patent that contains substantially similar claims to those asserted here. … For instance,

claim 20 of the '950 application and claim 1 of the '522 patent both claim the near identical methods for producing aligners.") (citations and footnote omitted).

With the ink barely dry on the Delaware court's opinion finding all of the '522 patent claims invalid under § 101, SDC filed the present lawsuit against Candid on December 8, 2020.[1] SDC's complaint alleges that Candid's Studio business model infringes "at least" claim 16 of the '599 patent.  D.I. 1 at ¶¶ 53, 58.

## III.    APPLICABLE LAW

### A.    Rule 12(b)(6) Standard

A court may dismiss an action that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding a motion to dismiss, a court may take judicial notice of prior court proceedings and matters of public record.  *See Rodriguez v. JPMorgan Chase Bank, N.A.*, No. SA-16-CV-410-XR, 2016 WL 4507388, at *2 (W.D. Tex. Aug. 26, 2016) (taking judicial notice of a prior court decision and granting motion dismiss on collateral estoppel grounds). Indeed, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  Candid requests that this Court take judicial notice of the patents, orders, opinions, and filings cited herein.

---

[1] As noted above, during the Delaware Lawsuit, SDC told Candid and the court that it would be adding the '599 patent to the Delaware Lawsuit upon issuance.  Delaware Lawsuit, D.I. 23 (Ex. 4) at 12 n.1.  After the invalidity decision, SDC changed course and filed this suit in the Western District of Texas, no doubt hoping that a change in venue might produce a different result.  Filing this suit was blatant forum-shopping, so on December 23, 2020, Candid filed a declaratory judgment action involving the '599 patent against SDC in Delaware.  *See Candid Care Co. v. SmileDirectClub, LLC*, D. Del. Case No. 1:20-cv-01764, D.I. 1.

### B.      Collateral Estoppel

"Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).  The purpose of the doctrine is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

In the patent context, "where a patent has been declared invalid in a proceeding in which the 'patentee has had a full and fair chance to litigate the validity of his patent,' the patentee is collaterally estopped from relitigating the validity of the patent." *Mississippi Chem. Corp. v. Swift Agric. Chems. Corp.*, 717 F.2d 1374, 1376 (Fed. Cir. 1983) (quoting *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971)) (internal citation omitted).  In addition to cases involving the same patent, collateral estoppel bars relitigating the same issues of validity with respect to a different, related patent.  *Ohio Willow Wood*, 735 F.3d at 1342.  For collateral estoppel to apply, the patent claims need not be identical, so long as "the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity."  *Id.*  On at least two occasions, courts have applied collateral estoppel on the pleadings to bar the assertion of a patent with claims similar to those of a different patent that were previously held invalid under 35 U.S.C. § 101 as directed to patent-ineligible subject matter.  *See, e.g.*, *NetSoc, LLC v. Oath Inc.*, No. 18-CV-12267 (RA), 2020 WL 419469, at *1-9 (S.D.N.Y. Jan. 24, 2020) (granting a motion to dismiss on collateral estoppel grounds); *Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*, Nos. 12-cv-6781 (RJS), 12-cv-7734 (RJS), 2016 WL 5793745, at *4-5 (S.D.N.Y. Sept. 30, 2016) (granting a motion for judgment on the pleadings on collateral estoppel grounds).

Although Federal Circuit law applies to issues unique to patents, regional circuit law is controlling for procedural issues like collateral estoppel. *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003). Under Fifth Circuit law, collateral estoppel, also known as issue preclusion, precludes a party from litigating an issue already raised in an earlier action between the same parties if: (1) the issue at stake is identical to the one involved in the prior action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995); *Sheerin v. Davis*, 3 F.3d 113, 114 (5th Cir. 1993).[2] To the extent a collateral estoppel determination involves a substantive issue of patent law, such as whether two patent claims are sufficiently similar so as to present the same issue, Federal Circuit law applies. *Ohio Willow Wood*, 735 F.3d at 1342.

The issue of whether to apply collateral estoppel is a question of law, *Bradberry*, 732 F.3d at 549, and is appropriately decided on a motion to dismiss. *See, e.g.*, *NetSoc*, 2020 WL 419469, at *1 (granting a motion to dismiss on collateral estoppel grounds because similar claims of a different patent were previously held invalid under § 101); *Arunachalam v. Exxon Mobil Corp.*, No. 6:19-CV-00171-ADA, 2019 WL 10303695, at *1 (W.D. Tex. June 26, 2019) (granting a motion to dismiss on collateral estoppel grounds where the asserted patent contained claims similar to previously invalidated claims of related patents); *Allergan, Inc. v. Apotex, Inc.*,

---

[2] A fourth element—that there are no special circumstances that would render estoppel inappropriate or unfair—applies only to the use of offensive (non-mutual) collateral estoppel by the plaintiff. *Bradberry v. Jefferson County, Tex.*, 732 F.3d 540, 548 (5th Cir. 2013); *Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013). That element is not applicable here because Candid is invoking the doctrine defensively based on a prior decision in a case that involved both Candid and SDC. Even if the fourth element were applicable here, there are no special circumstances that would render estoppel inappropriate or unfair, as the prior invalidity determination was made by the court of SDC's own choosing and SDC had every incentive and opportunity to make its case.

No. 1:14-CV-1028, 2015 WL 13358250, at *1 (M.D.N.C. Aug. 31, 2015) (granting a motion to dismiss on collateral estoppel grounds where different patents with substantially similar claims were previously found invalid for obviousness), *aff'd in relevant part sub nom. Allergan, Inc. v. Sandoz, Inc.*, 681 Fed. Appx. 955 (Fed. Cir. 2017).

"[T]he collateral estoppel effect of a prior district court decision is not affected by the fact that an appeal has been taken from the decision." *DietGoal Innovations, LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 812 (E.D. Tex. 2014); *see also Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1380-81 (Fed. Cir. 1999); *Prager v. El Paso Nat'l Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969).[3]

## IV.    ARGUMENT

### A.    Collateral Estoppel Bars SDC From Asserting At Least Claims 16-25 Of The '599 Patent

SDC's claim of infringement of at least claims 16-25 of the '599 patent is barred by the Delaware court's determination that all of the '522 patent claims are invalid under 35 U.S.C. § 101 as directed to a patent-ineligible abstract idea.[4]   As set forth below, the § 101 validity issue is identical to the one adjudicated in the Delaware Lawsuit, the § 101 validity issue was actually litigated in the Delaware Lawsuit, and the determination of the § 101 validity issue in the Delaware Lawsuit was a necessary part of the Delaware court's judgment.

---

[3] SDC has appealed the Delaware court's final judgment dismissing its complaint.  The appeal was docketed on December 22, 2020 (Federal Circuit Docket No. 2021-1446), and SDC's opening appeal brief is due on February 22, 2021.

[4] Claims 1-15 also are barred by collateral estoppel, but, as discussed in section IV.B., SDC's complaint does not allege infringement of any of those claims.

1.    **The § 101 Validity Issue Here Is Identical To The One Adjudicated In The Delaware Lawsuit**

The Delaware court analyzed the claims of the '522 patent under the *Alice* two-step framework, which first asks whether the patent's claims are drawn to a patent-ineligible concept, and, if the answer is yes, next asks whether the claims contain an inventive concept.  Delaware Lawsuit, D.I. 50 (Ex. 1) at 8 (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014)).  The Delaware court concluded that all of the '522 patent claims are directed to the abstract idea of "teleorthodontics," that is "having patients arrange for and receive dental aligners without ever seeing a dentist or orthodontist in person."  *Id.* at 15.  Having determined that the claims are directed to an abstract idea, the court next searched the claims for an inventive concept and found none.  *Id.* at 21-24.  Accordingly, the court held that all of the '522 patent claims are invalid for lack of subject-matter eligibility under 35 U.S.C. § 101 and on that basis dismissed SDC's complaint.  *Id.* at 24.

The Delaware court's invalidity determination and reasoning apply equally to claims 16-25 of the '599 patent.  Claims 16-25 of the '599 patent are substantively identical to invalid claims 1-10 of the '522 patent and the superficial differences between the two sets of claims are immaterial to the issue of patent eligibility.

SDC itself has admitted that the two sets of claims are substantively identical.  In seeking a preliminary injunction in the Delaware Lawsuit, SDC argued that the court should find the '522 patent claims eligible under § 101 because the USPTO "recently granted SDC's U.S. Application No. 16/859,950 ('the '950 application'), a continuation of the '522 patent that contains substantially similar claims to those asserted here."  Delaware Lawsuit, D.I. 23 (Ex. 4) at 11-12. During oral arguments before the Delaware court, SDC again represented that the '522 patent claims are "very, very similar, if not identical," to the '599 patent claims.  Delaware Lawsuit,

D.I. 29 (Ex. 2) at 12:5-18; *see also NetSoc*, 2020 WL 419469, at *8 (finding collateral estoppel based on a prior invalidity finding under § 101 where the plaintiff represented that two patents are "highly related" and the adjudicated and unadjudicated claims share "extreme similarity").

Consistent with SDC's representations to the Delaware court, a side-by-side comparison of claims 16-25 of the '599 patent to invalid claims 1-10 of the '522 patent confirms that they are in substance identical. *See* Ex. 6 (comparing claims 16-25 of the '599 patent to corresponding invalid claims 1-10 of the '522 patent); *Bourns, Inc. v. United States*, 537 F.2d 486, 493 (Ct. Cl. 1976) ("To assess the identity of … issues, it is convenient to compare the adjudicated and unadjudicated claims."). In the following table claim 16 of the '599 patent is on the left, invalid claim 1 of the '522 patent is in the middle, and a redline comparison showing how little claim 16 differs from claim 1 is on the right.

| '599 Claim 16 | '522 Claim 1 | Redline Comparison |
|---|---|---|
| Preamble | | |
| 16. A method of producing aligners for repositioning one or more teeth of a user, the method comprising: | 1. A method of producing aligners for repositioning one or more teeth of a user, the method comprising: | ~~1~~16. A method of producing aligners for repositioning one or more teeth of a user, the method comprising: |
| Limitation [1] | | |
| receiving, by an appointment management system, a request to schedule an appointment at an intraoral scanning site, the intraoral scanning site having an intraoral scanner configured to scan a mouth of a user, the appointment being for a technician to conduct an intraoral scan of the mouth of the user at the intraoral scanning site without a dentist or orthodontist physically seeing the user during the scheduled appointment; | receiving, by an appointment management system, a request to schedule an appointment at an intraoral scanning site, the intraoral scanning site having an intraoral scanner configured to scan a mouth of a user, the appointment being for a technician to conduct an intraoral scan of the mouth of the user at the intraoral scanning site without a dentist or orthodontist physically seeing the user during the scheduled appointment, wherein the technician is not a dentist or an orthodontist; | receiving, by an appointment management system, a request to schedule an appointment at an intraoral scanning site, the intraoral scanning site having an intraoral scanner configured to scan a mouth of a user, the appointment being for a technician to conduct an intraoral scan of the mouth of the user at the intraoral scanning site without a dentist or orthodontist physically seeing the user during the scheduled appointment~~, wherein the technician is not a dentist or an orthodontist~~; |

| Limitation [2] | | |
|---|---|---|
| scheduling, by the appointment management system, the appointment at the intraoral scanning site based on the request; | scheduling, by the appointment management system, the appointment at the intraoral scanning site in accordance with the request; | scheduling, by the appointment management system, the appointment at the intraoral scanning site ~~in accordance with~~based on the request; |
| **Limitation [3]** | | |
| generating and causing transmission of, by the appointment management system, a message to a device of the user, the message including a confirmation confirming the scheduled appointment; | generating and communicating, by the appointment management system, a message to a device of the user, the message including a confirmation confirming the scheduled appointment; | generating and ~~communicating~~causing transmission of, by the appointment management system, a message to a device of the user, the message including a confirmation confirming the scheduled appointment; |
| **Limitation [4]** | | |
| conducting, using the intraoral scanner, the intraoral scan at the intraoral scanning site during the scheduled appointment, the intraoral scan generating three-dimensional data of the mouth of the user; | conducting, using the intraoral scanner, the intraoral scan at the intraoral scanning site during the scheduled appointment, the intraoral scan generating three-dimensional data of the mouth of the user; | conducting, using the intraoral scanner, the intraoral scan at the intraoral scanning site during the scheduled appointment, the intraoral scan generating three-dimensional data of the mouth of the user; |
| **Limitation [5]** | | |
| causing generation of, by a treatment plan computing system located at a treatment plan site, a treatment plan for the user based on the three-dimensional data; | causing generation, by a treatment plan computing system located at a treatment plan site, of a treatment plan for the user based on the three-dimensional data of the mouth of the user; | causing generation _of_, by a treatment plan computing system located at a treatment plan site, ~~of~~a treatment plan for the user based on the three-dimensional data ~~of the mouth of the user~~; |
| **Limitation [6]** | | |
| receiving an indication of an approval of the treatment plan by a dentist or an orthodontist, wherein the approval is received without the approving dentist or orthodontist having physically seen the user; | receiving an indication of an approval of the treatment plan by a dental or orthodontic professional, wherein the approval is received without the dental or orthodontic professional having physically seen the user; | receiving an indication of an approval of the treatment plan by a ~~dental~~dentist or ~~orthodontic professional~~an orthodontist, wherein the approval is received without the ~~dental~~approving dentist or ~~orthodontic professional~~orthodontist having physically seen the user; |

| Limitation [7] | | |
|---|---|---|
| producing, at a fabrication site, a plurality of aligners based on the treatment plan, the plurality of aligners specific to the user and being configured to reposition one or more teeth of the user in accordance with the treatment plan; and | producing, at a fabrication site, a plurality of aligners based on the treatment plan, the plurality of aligners specific to the user and being configured to reposition one or more teeth of the user in accordance with the treatment plan; and | producing, at a fabrication site, a plurality of aligners based on the treatment plan, the plurality of aligners specific to the user and being configured to reposition one or more teeth of the user in accordance with the treatment plan; and |
| **Limitation [8]** | | |
| sending the plurality of aligners from the fabrication site directly to the user, wherein the user receives orthodontic treatment without ever having physically seen the approving dentist or orthodontist. | sending the plurality of aligners from the fabrication site directly to the user, wherein the user receives orthodontic treatment without ever having physically seen the approving dental or orthodontic professional. | sending the plurality of aligners from the fabrication site directly to the user, wherein the user receives orthodontic treatment without ever having physically seen the approving ~~dental~~dentist or ~~orthodontic professional~~orthodontist. |

The differences between claim 16 of the '599 patent and invalid claim 1 of the '522 patent are nominal and are wholly immaterial to the § 101 issue:

- Limitation [1] differs slightly in that claim 1 of the '522 patent recites that the technician who conducts the intraoral scan of the user's mouth is not a dentist or orthodontist. Although claim 16 of the '599 patent does not include this language, claim 16 does recite that no dentist or orthodontist physically sees the user during the scanning appointment. Necessarily then, claim 16 precludes the technician who conducts the intraoral scan from being a dentist or orthodontist.

- Limitations [2] and [3] differ only in word choice ("based on" vs. "in accordance with" and "causing transmission of" vs. "communicating"), not substance.

- In limitation [5] an "of" is moved and "of the mouth of the user" is deleted, but these changes do not alter the scope of claim 16 relative to claim 1. Previous limitation [4]

makes clear that "the three-dimensional data" recited in limitation [5] is "of the mouth of the user."

- Finally, with respect to limitations [6] and [8], "dental or orthodontic professional" in claim 1 of the '522 patent is changed to "dentist or orthodontist" in claim 16 of the '599 patent. Whether the approver is a dentist/orthodontist or another dental/orthodontic professional is immaterial to the § 101 eligibility question. Either way, the abstract idea (teleorthodontics, *i.e.*, having patients arrange for and receive dental aligners without ever seeing a dentist or orthodontist in person) is the same and requiring the approver to be a dentist/orthodontist rather than another dental/orthodontic professional does not supply an inventive concept.

The differences between dependent claims 17-25 of the '599 patent and dependent claims 2-10 of the '522 patent are similarly superficial and immaterial to the § 101 eligibility question. *See* Ex. 6.

Claims 16-25 of the '599 patent are directed to the same abstract idea that the Delaware court found claims 1-10 of the '522 patent are directed to, namely, "teleorthodontics," *i.e.*, "having patients arrange for and receive dental aligners without ever seeing a dentist or orthodontist in person." Delaware Lawsuit, D.I. 50 (Ex. 1) at 15. Further, claims 16-25 of the '599 patent do not contain anything of substance—much less an inventive concept—above and beyond what is recited in claims 1-10 of the '522 patent. For these reasons, the § 101 validity issue here is identical to the one involved in the prior Delaware Lawsuit.

There is ample precedent for applying collateral estoppel to bar the assertion of a patent that was not itself previously held invalid. *See Ohio Willow Wood*, 735 F.3d at 1342 ("Our precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is

13

the identity of the *issues* that were litigated that determines whether collateral estoppel should apply.  If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies.") (citations omitted). Courts have done so on various invalidity grounds, including prior adjudications of invalidity under 35 U.S.C. §§ 101, 103, and 112.  *See, e.g.*, *id.* at 1342-43 (obviousness); *Amgen, Inc. v. Genetics Inst., Inc.*, 98 F.3d 1328, 1332 (Fed. Cir. 1996) (lack of enablement); *Speedfit LLC v. Chapco Inc.*, 2020 WL 5633101, at *7-12 (E.D.N.Y. Sept. 21, 2020) (on-sale bar); *NetSoc*, 2020 WL 419469, at *1-9 (patent-ineligible subject matter under § 101); *Arunachalam*, 2019 WL 10303695, at *1-4 (indefiniteness, lack of enablement, and lack of written description); *Fellowes, Inc. v. ACCO Brands Corp.*, 2019 WL 1762910, at *2-8 (N.D. Ill. Apr. 22, 2019) (obviousness); *Joao*, 2016 WL 5793745, at *1-5 (patent-ineligible subject matter under § 101); *Allergan*, 2015 WL 13358250, at *1-3 (obviousness); *Tyco Healthcare Group LP v. Applied Med. Res. Corp.*, No. 9:09-CV-176, 2013 WL 4757948, at *1-4 (E.D. Tex. Sept. 4, 2013) (obviousness); *Abbvie Inc. v. Kennedy Trust for Rheumatology Research*, No. 13 Civ. 1358 (PAC), 2014 WL 3360722, at *1-8 (S.D.N.Y. July 9, 2014) (double patenting); *Orenshteyn v. IBM, Corp.*, 979 F. Supp. 2d 448, 453-54 (S.D.N.Y. 2013) (invalidity over prior art).

The recent *NetSoc* decision is particularly on point.  There, the plaintiff initially sued the defendant for infringement of the '107 patent.  *NetSoc*, 2020 WL 419469, at *1.  The plaintiff thereafter filed an amended complaint asserting infringement of a different patent, the '591 patent. *Id.*  The plaintiff justified the amendment by "by explaining that 'the '107 patent is a continuation application of the application that issues as the '591 patent' and that the amendment is 'no surprise as both the '107 patent and the '591 patent are highly related.'"  *Id.*  The plaintiff also argued there is "extreme similarity in the independent Claim 1 of the '107 patent as compared to the

'591 patent." *Id.*  Shortly after filing the amended complaint, another court (the Northern District of Texas) held the '107 patent claims invalid under 35 U.S.C. § 101 as directed to a patent-ineligible abstract idea.  *Id.* at *2.  The defendant moved to dismiss the amended complaint on the ground that collateral estoppel bars the plaintiff from asserting infringement of the '591 patent, and further because the '591 patent claims are invalid under § 101.  *Id.*

Without reaching the merits of the § 101 issue, the court granted the defendant's motion to dismiss on collateral estoppel grounds.  *Id.* at *9.  The plaintiff conceded that the Northern District of Texas actually decided the § 101 validity issue, that the plaintiff had a full and air opportunity to litigate the issue in the Northern District of Texas, and that the § 101 issue was a necessary part of the Northern District of Texas's final judgment dismissing the case.  *Id.* at *4.  The only question was whether the issues in both proceedings are identical.  *Id.* at *5.  The court looked to Federal Circuit law, finding that the question is not whether the claims of the two patents are identical, but rather whether the two sets of claims are "substantially similar" such that the Northern District of Texas's invalidity analysis would not be materially altered.  *Id.*  The court concluded that the claims were substantially similar, based on its own comparison of the claims and the plaintiff's prior statements about how the '107 and '591 patents are "highly related" and have claims that share "extreme similarity." *Id.* *5-8.

Here, as in *NetSoc*, the '522 and '599 patent claims are substantially similar such that the Delaware court's § 101 invalidity analysis applies with equal force to the '599 patent claims.  As in *NetSoc*, SDC has made admissions about the similarity of the claims in an attempt to advance its own interests.  If anything, the facts of the present case are even more compelling than those in

*NetSoc* because there were at least colorable differences between the claims of the '107 and '591 patents at issue in that case.  *See id.* at *6-7.  Here, the differences are minimal and superficial.

### 2. The § 101 Validity Issue Was Actually Litigated In The Delaware Lawsuit

The patent eligibility issue was fully and fairly litigated in the Delaware Lawsuit.  Candid filed a motion to dismiss SDC's complaint on the sole ground that the claims of the '522 are invalid under 35 U.S.C. § 101 as directed to a patent-ineligible abstract idea.  *See* Delaware Lawsuit, D.I. 12, 13.  SDC filed a brief in opposition to Candid's motion.  *See* Delaware Lawsuit, D.I. 17.  SDC followed up its opposition brief with a notice of supplemental authority, citing the USPTO's allowance of its '950 application (which issued as the '599 patent at issue here).  *See* Delaware Lawsuit, D.I. 21.  SDC argued the § 101 issue yet again in its brief in support of its motion for a preliminary injunction.  *See* Delaware Lawsuit, D.I. 23 (Ex. 4) at 10-12.  Finally, the § 101 issue was argued during a conference before the Delaware court on November 4, 2020.  *See* Delaware Lawsuit, D.I. 29 (Ex. 2) at 6:10-8:18, 10:5-12:25, 14:15-19:4, 22:21-23:18, 24:9-26:21.

The Delaware court thereafter issued a detailed written opinion explaining why the '522 patents are invalid under the *Alice* two-step framework.  *See* Delaware Lawsuit, D.I. 50 (Ex. 1).  The court acknowledged SDC's arguments but found them unpersuasive. This included a consideration and rejection of SDC's arguments that fact discovery and claim construction were required before the § 101 issue could be adjudicated.  *Id.* at 13-14.

SDC had every incentive and opportunity to make its case for patent eligibility before the court of its own choosing and lost.  Just because SDC may regret its original choice of venue and disagree with the Delaware court's invalidity determination does not defeat collateral estoppel. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 937 F.3d 1359, 1379 (Fed. Cir. 2019) ("A collateral estoppel determination is based on what the prior court ruled, and the prior court's

ruling cannot be dissected to determine whether it was somehow based on an incorrect legal or factual basis."); *Pharmacia*, 170 F.3d at 1380 (holding that the inquiry into whether the plaintiff was afforded a full opportunity to litigate is "quite narrow" and does not consider "whether the prior finding of invalidity was correct").

### 3. The Determination Of The § 101 Validity Issue In The Delaware Lawsuit Was A Necessary Part Of The Delaware Court's Judgment

The Delaware court's determination that all of the claims of the '522 patent are invalid under 35 U.S.C. § 101 as directed to a patent-ineligible abstract idea was a necessary part of the court's judgment in that action.  Indeed, it was the sole basis for dismissing SDC's complaint.  Accordingly, this element is met.

### B. SDC's Complaint Does Not Allege Infringement Of Claims 1-15 Of The '599 Patent

Collateral estoppel similarly bars SDC from asserting claims 1-15 of the '599 patent, but the Court need not reach that issue in order to grant Candid's motion to dismiss because SDC's complaint does not allege infringement of any of those claims.  SDC's complaint identifies only one specific claim—independent claim 16—as being allegedly infringed by Candid.  *See* D.I. 1 at ¶ 53 ("Therefore, Candid at least directly infringes claim 16 of the '599 patent ...."), ¶ 58 ("Candid makes, uses, sells, and/or offers for sale methods and systems that directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '599 patent, including at least independent claim 16 ...").  Further, SDC's complaint only purports to map Candid's Studio workflow to the limitations of claim 16.  *See* D.I. 1 at ¶¶ 40-53.  Every other claim of the '599 patent includes one or more limitations that are not present in claim 16.  For example, the other independent claims each require reminding the user to leave for the scheduled appointment a threshold time prior to the appointment based on the location of the user with respect to the scanning site and at least one of traffic, weather, time of day, or day of the week.  *See* '599 patent

(Ex. 5) at claims 1, 8, 12.  SDC's complaint does not allege that Candid practices the "reminder" limitation or any other limitations beyond those recited in claim 16.  SDC's complaint therefore fails to plausibly allege infringement of any claims other than claim 16, which SDC cannot assert due to collateral estoppel.  *See Estech Sys., Inc. v. Regions Fin. Corp.*, No. 6:20-cv-00322-ADA, 2020 WL 6324321, at *2 (W.D. Tex. Oct. 28, 2020) ("[T]he pleading standards established by *Twombly* and *Iqbal* require a plausible inference that an accused device meets all of the limitations of the asserted claims."); *De La Vega v. Microsoft Corp.*, Nos. W-19-CV-00612-ADA, W-19-CV-00617-ADA, 2020 WL 3528411, at *6-7 (W.D. Tex. Feb. 7, 2020) (dismissing a complaint for failure to state a claim upon which relief can be granted where the complaint did not allege how a "coupling" limitation is met).

## V.   CONCLUSION

Because the only infringement allegations in SDC's complaint are barred by collateral estoppel, SDC's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: January 4, 2021

Respectfully submitted,

*/s/ Michael P. Sandonato (w/permission Andrea L. Fair)*
Michael P. Sandonato (to be admitted *pro hac vice*)
Venable LLP
1270 Avenue of the Americas
New York, New York 10104
(212) 307-5500 (telephone)
(212) 307-5598 (facsimile)
mpsandonato@venable.com

Wesley Hill (Texas Bar. No. 24032294)
Andrea L. Fair (Texas Bar. No. 24078488)
Ward, Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (main line)
(903) 757-2323 (facsimile)
wh@wsfirm.com
andrea@wsfirm.com

*Attorneys for Defendant Candid Care Co.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on January 4, 2021.

/s/ *Andrea L. Fair*