# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| SMILEDIRECTCLUB, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CANDID CARE CO.,<br><br>　　　　Defendant. | C.A. No. 6:20-cv-01115-ADA<br><br>**JURY TRIAL DEMANDED** |

## **DEFENDANT'S CONTINGENT MOTION TO TRANSFER**

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A.  The Case Properly Belongs in the United States District Court for the District of Delaware Under the First-Filed Rule ................................................................... 2

        1.  The First-Filed Rule ................................................................................. 2

        2.  Procedural History ................................................................................... 4

        3.  Substantial Overlap .................................................................................. 6

        4.  The Case Should be Transferred to the District of Delaware or, in the Alternative, the Case Should Be Stayed Pending the Delaware Court's Determination of the Whether it Will Maintain Jurisdiction Over the *Delaware Cases* ................................................................................ 9

    B.  Even if the Instant Action Were Considered the First-Filed Case, the Factual Circumstances Warrant Departing from the First-Filed Rule and Transferring the Instant Action to the District of Delaware in the Interests of Justice ................... 10

III. CONCLUSION ................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Cases**

*Alexander v. Franklin Resources, Inc.*,
   No. C 06-7121 SI, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007) ............................................. 12

*AmberWave Sys. Corp. v. Intel Corp.*,
   No. 2:05-CV-321, 2005 WL 2861476 (E.D. Tex. Nov. 1, 2005) ............................................. 8

*Amni Innovation Corp. v. Classic World Imports, Inc.*,
   No. 3:04-CV-1218-B, 2005 WL 65611 (N.D. Tex. Jan. 12, 2005) ......................................... 10

*Burger v. Am. Maritime Officers Union*,
   No. 97-31099, 1999 WL 46962 (5th Cir. Jan. 27, 1999) ........................................................ 5, 9

*Cadle Co. v. Whataburger of Alice, Inc.*,
   174 F.3d 599 (5th Cir. 1999) ..................................................................................... 2, 3, 4, 10

*Candid Care Co. v. SmileDirectClub, LLC*,
   Case No. 1:20-cv-01764 (D. Del.) .............................................................................................. 5

*Cosden Oil & Chemical Co. v. Foster Grant Co., Inc.*,
   432 F. Supp. 956 (D. Del. 1977)
   *aff'd* 577 F.2d 725 (3d Cir. 1978) .......................................................................................... 3, 8

*Creative Compounds, LLC v. S.A.N. Nutrition Corp.*
   No. CV 12-411 PA (RZx), 2012 WL 13012706 (C.D. Cal. Mar. 30, 2012) ............................. 12

*Excentus Corp. v. Kroger Co.*,
   No. 3:10-CV-0483-B, 2010 WL 3606016 (N.D. Tex. Sept. 16, 2010) ................................... 10

*Mann Mfg., Inc. v. Hortex, Inc.*,
   439 F.2d 403 (5th Cir. 1971) ............................................................................................. 2, 3, 7

*O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*,
   No. 2:04-cv-359, 2006 WL 887391 (E.D. Tex. Mar. 28, 2006) ............................................ 3, 8

*Ohio Willow Wood Co. v. Alps South LLC*,
   735 F.3d 1333 (Fed. Cir. 2013) ................................................................................................. 3

*Pacific Coast Building Prods., Inc. v. Certainteed Gypsum Manuf., Inc.*,
   No. 4:18-cv-4165, 2019 WL 4046550 (W.D. Ark. Aug. 27, 2019) ........................................ 12

*Save Power Ltd. v. Syntek Fin. Corp.*,
   121 F.3d 947 (5th Cir. 1997) ............................................................................................... 2, 6

*SmileDirectClub, LLC v. Candid Care Co.*,
    Case No. 1:20-cv-00583-CFC (D. Del.) .............................................................................. 1, 4, 6

*Southeast Power Grp., Inc. v. SAP Am., Inc.*,
    No. 2:20-cv-00398-JMG, 2020 U.S. Dist. LEXIS 148624 (E.D. Pa. Aug. 18, 2020) ............ 5, 9

*Sutter Corp. v. P&P Indus., Inc.*,
    125 F.3d 914 (5th Cir. 1997) ............................................................................................. 4, 10

*Sweepstakes Patent Co., LLC v. Burns*,
    No. 14-62351-CIV-MARTINEZ-GOODMAN,
    2015 WL 11197816 (S.D. Fla. Apr. 7, 2015) ......................................................................... 6

I.  **INTRODUCTION**

Defendant Candid Care Co. ("Candid") hereby contingently moves to transfer this case to the United States District Court for the District of Delaware under the principles of the first-filed rule.[1]

SmileDirectClub, LLC. ("SmileDirectClub" or "SDC") first filed a patent infringement lawsuit against Candid in the United States District Court for the District of Delaware ( "District of Delaware" or "Delaware Court") asserting that Candid's Studio business model and workflow infringes U.S. Patent No. 10,636,522 ("the '522 patent).  *See SmileDirectClub, LLC v. Candid Care Co.*, Case No. 1:20-cv-00583-CFC (D. Del.) ("*Delaware Case I*").  There, Candid moved to dismiss the case because the '522 patent claims are directed to a patent-ineligible abstract idea. SDC defended against ineligibility, in part asserting that "virtually identical" claims had been allowed by the United States Patent Office and that the subject matter eligibility of the '522 patent was thus confirmed vis-à-vis the claims of what would become the patent-in-suit here, U.S. Patent No. 10,861,599 ("the '599 patent").  *See Delaware Case I*, D.I. 23 (SDC Preliminary Injunction Brief), at 11-12 (Ex. 1); *see also* D.I. 29 (Nov. 4, 2020 Hearing Tr.) at 12:5-18 (Ex. 2).  SDC requested a preliminary injunction in the *Delaware Case I*, and argued that it intended to add the '599 patent to the litigation upon issuance, "further exemplifying the need for an injunction."  *Id.*, D.I. 23, at 11-12, n. 1 (Ex. 1).  On December 7, 2020, the Delaware Court held the claims of the '522 patent invalid for lack of subject-matter eligibility under 35 U.S.C. § 101.  *See Delaware Case I*, D.I. 50 (Ex. 3).

---

[1] Candid has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim based on collateral estoppel, which remains pending and is Candid's lead motion. D.I. 12; 18.  In the event that motion is denied, Candid brings this contingent motion to transfer under first-filed principles.

1

The very next day, on December 8, 2020, the '599 patent issued. But SDC made no attempt to assert the '599 patent in Delaware as it had told the Delaware Court and Candid it would do so. Instead, with the ink barely dry on the Delaware Court's opinion finding all of the '522 patent claims invalid under § 101, SDC filed this case asserting the "virtually identical claims" from the '599 patent in this forum, all while appealing the '522 patent invalidity finding that collaterally estops the very claims of the '599 patent asserted here. SDC's plea to continue its meritless claims against Candid in this Court in a blatant attempt to avoid the adverse ruling from its chosen forum must fail under the entrenched principles of the first-filed rule, comity, and judicial economy. If SDC has its way, it will be proceeding with virtually identical patent infringement claims against Candid in this Court and in Delaware. The first-filed rule protects against such vexatious and duplicative litigation.

## II.   ARGUMENT

### A.   The Case Properly Belongs in the District of Delaware Under the First-Filed Rule

#### 1.   The First-Filed Rule

When a case filed in a district court raises substantially overlapping issues as a previously pending or "first-filed" case in another district court, the district court in the second-filed case should refuse to hear the case and instead transfer the case under general notions of comity. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999); *see also Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950-51 (5th Cir. 1997) (stating that the goal of the first-filed rule is "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result") (internal quotations omitted).

The Fifth Circuit has held that the first-filed court is the "court initially seized of a controversy." *Mann*, 439 F.2d at 407. The second action need not be a mirror image of the first action; "substantial overlap" or "overlap of the substantive issues" is all that is required. *Id.* at 408. In a patent case, substantial overlap exists where the parties and accused products are the same, and the patents asserted in the respective first-filed and later-filed cases are related and directed to substantially similar subject matter. *Id.* at 407; *see also Ohio Willow Wood Co. v. Alps South LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (holding that an identity of issues exists for patent claims that are not identical "[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity"). The Fifth Circuit and other courts have held that the first-filed analysis does not turn simply on the patent asserted in each of the respective cases, but instead on whether the claims are substantially similar. *See, e.g.*, *Mann*, 439 F.2d at 407 (holding that the first-filed case was the case filed in New York, even though the Texas case was the first-filed case on a different, but related patent); *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*, No. 2:04-cv-359, 2006 WL 887391, at *2 (E.D. Tex. Mar. 28, 2006) (transferring a case to California even though the Texas case was the first case filed involving a different patent related to the patent involved in the California case); *Cosden Oil & Chemical Co. v. Foster Grant Co., Inc.*, 432 F. Supp. 956, 960 (D. Del. 1977) *aff'd* 577 F.2d 725 (3d Cir. 1978) (applying the first-filed rule to a later-issued patent that was "part and parcel of the controversy surrounding" the original patent asserted in Delaware, even though that later patent was technically first asserted in Texas).

"Once the likelihood of substantial overlap between the two suits has been demonstrated, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed." *Cadle Co.*, 174 F.3d at 605. Instead, "the proper course of action [is] for

3

the [second-filed] court to transfer the case" to the first-filed court. *Id.* at 606.  It is then the responsibility of the first-filed court to decide whether the second suit should be dismissed, stayed, consolidated, or allowed to proceed independently. *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997).

## 2. Procedural History

The controversy between SDC and Candid is whether SDC's patents directed to its teleorthodontics workflow are valid, and whether Candid's Studio business model and workflow infringe those patents.

SDC first filed suit on this controversy in the District of Delaware, asserting infringement of the '522 patent, and the Delaware Court seized that controversy. *See generally Delaware Case I*.  The Delaware Court held every claim of the '522 patent invalid as directed to an abstract idea, and thus dismissed SDC's infringement complaint on December 7, 2020.  *See Delaware Case I*, D.I. 50 (Ex. 3).  The case, while administratively closed, is pending appeal to the Federal Circuit, and if SDC has its way, would come back to the Delaware Court on any remand.

During the pendency of the first Delaware case, SDC stated in unequivocal terms that the '599 patent would be asserted against Candid in Delaware—SDC's chosen forum for this controversy: "upon issuance, SDC intends to add [the '599 patent] to this litigation." *Delaware Case I*, D.I. 23, at 11-12, n. 1 (Ex. 1).  SDC also argued that (1) the Patent Office's decision to grant the '950 application [the '599 patent] had significant relevance to the § 101 issue in the *Delaware Case I* due to the substantial similarity between the claims of the '599 patent and the '522 patent (*see, e.g.*, *Delaware Case I*, D.I. 23, at 11-12 (Ex. 1); *see also* D.I. 29, D.I. 29 at 12:5-18 (Ex. 2)); and (2) its intention to add the '599 patent to *Delaware Case I* "further exemplif[ied] the need for an injunction." *Id.*, D.I. 23, at 12, n.1 (Ex. 1).  SDC squarely and unequivocally made the '599 patent part of the controversy it started in Delaware.

However, the day after the adverse ruling in *Delaware Case I*, SDC fled the forum it chose and, on December 8, 2020, filed the instant case on the "virtually identical" '599 patent. *See SmileDirectClub, LLC v. Candid Care Co.*, Case No. 6:20-cv-01115 (W.D. Tex.).

Recognizing Delaware is the original situs of this controversy, Candid filed a declaratory judgment complaint in Delaware on December 23, 2020, asserting claims that SDC is precluded from asserting infringement of the '599 patent against Candid due to claim and issue preclusion, and as well as claims of invalidity and non-infringement. *See Candid Care Co. v. SmileDirectClub, LLC*, Case No. 1:20-cv-01764 (D. Del.) ("*Delaware Case II*").[2]

Here, there is no dispute that the Delaware Court was first seized of the controversy surrounding the infringement claims asserted by SDC against Candid's Studio business model and workflow. While *Delaware Case I* is administratively closed pending SDC's appeal, that case still retains its status as the first-filed lawsuit. *See Burger v. Am. Maritime Officers Union*, No. 97-31099, 1999 WL 46962, at *1 (5th Cir. Jan. 27, 1999) ("[T]he same policy concerns for avoiding duplicative litigation and comity exist when a similar matter is pending in a federal district court and a federal court of appeals in a different circuit."). In *Burger,* the court of appeals held that a lawsuit filed in the Northern District of Florida in 1996 was the first-filed lawsuit vis-à-vis a nearly-identical lawsuit filed in the Eastern District of Louisiana in 1997, even though the Florida lawsuit had been dismissed and was pending appeal at the time the Louisiana lawsuit was filed. *See id.* at *1; *see also Southeast Power Grp., Inc. v. SAP Am., Inc.*, No. 2:20-cv-00398-JMG, 2020 U.S. Dist. LEXIS 148624, at *9-10 (E.D. Pa. Aug. 18, 2020) ("The question of whether to stay [or dismiss] a second-filed action when another, first-filed case is on

---

[2] SDC has moved to dismiss the Delaware Case II complaint under the first-filed rule. Candid opposed. The motion is fully briefed and awaiting a decision by the Delaware Court.

appeal is precisely the type of situation contemplated by the first-filed rule."); *Sweepstakes Patent Co., LLC v. Burns*, No. 14-62351-CIV-MARTINEZ-GOODMAN, 2015 WL 11197816, at *1 (S.D. Fla. Apr. 7, 2015) (holding that the dismissed lawsuit was the first-filed suit even though the court's "order of dismissal [was] currently pending before the Eleventh Circuit"). *Delaware Case II* was filed as part and parcel of the controversy in *Delaware Case I* to protect Candid from the vexation of subsequent litigation over the same subject matter and to enjoin SDC from relitigating those claims in the Western District of Texas, thus avoiding "the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Save Power*, 121 F.3d at 950-51. Because *Delaware Case II* is an extension of *Delaware Case I* where SDC squarely and unequivocally put the '599 patent into controversy, *Delaware Case II* also should be considered the first-filed case, either collectively with *Delaware Case I* or individually when compared to the instant action.

### 3. Substantial Overlap

Substantial overlap plainly exists here. The cases involve the same parties—SmileDirectClub as the patent owner and Candid as the alleged infringer. The cases involve the same accused products—Candid's Studio business model and workflow. Finally, the '599 patent asserted in the instant action and subject of *Delaware Case II* and the '522 patent in *Delaware Case I* are not materially different and are directed to the same purported invention—a teleorthodontics workflow. Indeed, in SDC's own words, the claims of the '599 patent are "very, very similar, if not identical" to the '522 patent claims. *See Delaware Case I*, D.I. 29 (Nov. 4, 2020 Hearing Tr.) at 12:5-18 (Ex. 2); *see also* D.I. 23 (SDC Preliminary Injunction Br.) at 12 (Ex. 1) ("The USPTO recently granted SDC's U.S. Application No. 16/859,950 ('the '950 application'), a continuation of the '522 patent that contains substantially similar claims to those

6

asserted here. … For instance, claim 20 of the '950 application [issued claim 16 of the '599 patent] and claim 1 of the '522 patent both claim the near identical methods for producing aligners.") (citations and footnote omitted).  In fact, a redline comparison of claims 16-25 of the '599 patent and claims 1-10 of the '522 patent show the differences between the claims are at most superficial.  *See* Ex. 4.  For example, claim 16 of the '599 patent removed "wherein the technician is not a dentist or orthodontist" because it was redundant of the language immediately preceding it which states "without a dentist or orthodontist physically seeing the user during the scheduled appointment."  *See* Ex. 4.  Surely if the dentist/orthodontist does not physically see the user during the scheduled appointment, then the dentist/orthodontist could not be the technician that performs the scan during the scheduled appointment.  Next, claim 16 of the '599 patent changes "in accordance with" to "based on" and "communicating" to "causing transmission of," which do not alter claim scope in any material way.  *See* Ex. 4.  Claim 16 also removes "of the mouth of the user" to modify "three-dimensional data," simply because that statement was redundant of the limitation before it which states "generating three-dimensional data of the mouth of the user."  *See* Ex. 4.  Finally, claim 16 changes "a dental or orthodontic professional" to "a dentist or an orthodontist," again, an immaterial change.  *See* Ex. 4.

The Fifth Circuit and other courts have held that the "substantial overlap" inquiry does not turn on whether the follow-on lawsuit involves different patents.  For example, in *Mann*, the follow-on case involved a different patent, but one that came from the same patent family as the earlier filed action.  *Mann*, 439 F.2d at 406.  Nevertheless, the Fifth Circuit found substantial overlap between the two actions, and even though the continuation patent in *Mann* was asserted for the first time in the Western District of Texas, the Western District of Texas action was the second-filed case.  *Id.* at 408.

7

In *Cosden Oil*, the declaratory judgment plaintiff filed a first suit in the District of Delaware against Patent A. *Cosden Oil*, 432 F. Supp. at 958. Subsequently, the patent owner was issued Patent B and filed suit that same day on Patent B in the Northern District of Texas. *Id.* The declaratory judgment plaintiff then filed an amended complaint in the District of Delaware against Patent B, after the patent owner had filed its infringement suit in the Northern District of Texas. *Id.* The court held that the "first-filed doctrine enunciated by the Third Circuit Court of Appeals in *Crosley Corp.*" applied despite there being a *different* patent, and despite the fact that the suit involving that patent was technically first-filed in the Northern District of Texas. The court reasoned the later-issued patent was "part and parcel of the controversy surrounding" the original patent. *Id.* at 960. Consequently, the court held that the Delaware lawsuit was the first-filed lawsuit and "enjoin[ed] the Dallas suit pending disposition of the claims" in Delaware. *Id.*

Similarly, in *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*, the district court transferred the follow-on lawsuit on a continuation patent to the Northern District of California on the basis of the first-to-file rule even though the continuation patent was first asserted in the Eastern District of Texas. *O2 Micro*, 2006 WL 887391, at *2 (holding that U.S. District Court for the Northern District of California "was the court first vested with jurisdiction over the dispute between these parties concerning these related patents"); *see also AmberWave Sys. Corp. v. Intel Corp.*, No. 2:05-CV-321, 2005 WL 2861476, at *1-2 (E.D. Tex. Nov. 1, 2005) (applying the first-to-file rule to cases involving unrelated patents that addressed similar—but not identical—subject matter, *i.e.*, "patents address[ing] different scientific aspects, mechanical engineering and electrical engineering, of semiconductor transistors").

Similarly, in the controversy between SDC and Candid, the Delaware Court was first vested with jurisdiction over the related patents at issue between SDC and Candid, making *Delaware Case I* and *Delaware Case II*, individually and collectively, the first-filed cases. Indeed, SDC itself expressed that Delaware was ***its chosen forum*** for its infringement allegations relating to the '599 patent, as explained above, and only fled to this District the day after receiving the adverse ruling as to the near-identical claims of the related '522 patent.

Applying the first-filed rule, *Delaware Case I*—and by extension *Delaware Case II* as part and parcel of the still-pending controversy in *Delaware Case I*—is the first-filed case compared to the instant action in this Court. That result "manifestly avoid[s] the waste of duplication, [] avoid[s] rulings which may trench upon the authority of sister courts, and [] avoid[s] piecemeal resolution of uses that call for a uniform result." *Burger*, 1999 WL 46962, at *1. If SDC has its way in the appeal of *Delaware Case I*, any remand would be to the Delaware Court, and then Candid would be forced to litigate the virtually identical claims in two districts—a result the first-filed rule and considerations of comity seek to avoid. *See, e.g.*, *Southeast Power*, 2020 U.S. Dist. LEXIS 148624, at *10 ("While an appeal is pending, [the second-filed] Court must consider issues of comity as it is possible that the result [in the first-filed case] will be overturned. The immediate result of that outcome would be that the court in which this matter was first filed would have before it the same parties and issues at the same stage of litigation as [the second-filed] Court of equal jurisdiction.").

> **4. This Case Should be Transferred to the District of Delaware or, in the Alternative, the Case Should Be Stayed Pending the Delaware Court's Determination of the Whether it Will Maintain Jurisdiction Over *Delaware Case II***

As demonstrated above, substantial overlap clearly exists between the *Delaware Cases* and instant action. As such, "it is no longer up to [this Court] to resolve the question of whether

9

both should be allowed to proceed," *Cadle Co.*, 174 F.3d at 605, and it is instead incumbent upon the Delaware Court to decide whether the second suit should be dismissed, stayed, consolidated, or allowed to proceed independently, *see Sutter Corp.*, 125 F.3d at 920.  Accordingly, this case should be transferred to the District of Delaware for its determination of whether to dismiss or consolidate the instant action with one or both of the *Delaware Cases*.

In the alternative, this Court should stay this action until at least when the Delaware Court determines whether it will retain jurisdiction of *Delaware Case II*.  A stay in these circumstances is warranted because the current litigation is duplicative of litigation in the Delaware Court, and if both actions were to proceed, there would be a "heightened risk of inconsistent rulings which … promotes uncertainty and impedes the administration of justice." *Excentus Corp. v. Kroger Co.*, No. 3:10-CV-0483-B, 2010 WL 3606016 (N.D. Tex. Sept. 16, 2010); *see also Amni Innovation Corp. v. Classic World Imports, Inc.*, No. 3:04-CV-1218-B, 2005 WL 65611, at *1 (N.D. Tex. Jan. 12, 2005).

> **B.     Even if the Instant Action Were Considered the First-Filed Case, the Factual Circumstances Warrant Departing from the First-Filed Rule and Transferring the Instant Action to the District of Delaware in the Interests of Justice**

Assuming *arguendo* that the instant action is deemed the first-filed case on the '599 patent, factual circumstances warrant departing from the first-filed rule and transferring this case to the District of Delaware in the interests of justice.  The Delaware Court is in the best position to resolve the dispute between the parties based on its comprehensive ruling in *Delaware Case I*.  Proceeding in Delaware will conserve judicial resources and the parties' resources because (1) the Delaware Court is already familiar with the parties and has already considered both the '522 and '599 patent claims and (2) the Delaware Court is already familiar

10

with the purported "technology" involved and has already ruled on the invalidity issue as to these claims (*see* Candid's Motion to Dismiss, D.I. 12; 18).

SDC expressly stated its intent to assert the '599 patent against Candid on the same accused workflow and services as those accused in the District of Delaware, and Candid expected to defend against that patent in the District of Delaware. *See Delaware Case I*, D.I. 23, at 11-12, n. 1 (Ex. 1). Upon receiving an adverse ruling on a substantially similar and related patent, SDC reversed course and filed this instant action in this District. The only reasonable inference for filing suit in this District is SDC's attempt to avoid the adverse ruling of the Delaware Court pertaining to the invalidity of substantially identical patent claims. SDC could have filed its suit in Delaware on the '599 patent and litigated this common dispute in the forum it chose. Instead, it fled its chosen forum and pursued an appeal, that if successful, will return the matter to Delaware.

Nothing has changed in the respective parties' status from October 27, 2020, when SDC represented it would add the '599 patent to *Delaware Case I* that would warrant a change of forum on this controversy from the District of Delaware to the Western District of Texas—the parties are still organized in, maintain their principal places of business in, and operate in their same respective states as they were when the controversy was actively being litigated in *Delaware Case I*. The only thing that has changed in the controversy between SDC and Candid was the invalidity ruling on the '522 patent, leaving the inescapable conclusion that the only reason for filing the instant action in this District was to avoid facing its collateral estoppel problems before the court that issued the adverse ruling.

This case is similar to others where the plaintiff seeks to avoid an unfavorable ruling in the first court on substantially identical claims. *See, e.g.*, *Pacific Coast Building Prods., Inc. v.*

*Certainteed Gypsum Manuf., Inc.*, No. 4:18-cv-4165, 2019 WL 4046550, at *6 (W.D. Ark. Aug. 27, 2019) (staying case in Arkansas under first-filed principles pending later-filed declaratory judgment action filed in California (the district of an earlier-filed lawsuit on related patents) because plaintiff's lawsuit in Arkansas on related patents "suggest[ed] an effort to avoid adverse rulings in the Northern District of California and remedy past mistakes in a new forum"); *Creative Compounds, LLC v. S.A.N. Nutrition Corp.* No. CV 12-411 PA (RZx), 2012 WL 13012706, at *3 (C.D. Cal. Mar. 30, 2012) (disregarding plaintiff's forum choice and transferring the case from California to Florida where plaintiff brought an action in the Central District of California on a patent previously held invalid by the Southern District of Florida (but reversed by the Federal Circuit on procedural grounds for lack of subject matter jurisdiction) reasoning that "it appears that the filing of the action in a new venue is part of an effort to avoid what [plaintiff] now sees as an unfavorable forum"); *Alexander v. Franklin Resources, Inc.,* No. C 06-7121 SI, 2007 WL 518859, at *4 (N.D. Cal. Feb. 14, 2007) (disregarding the plaintiff's forum choice and transferring the case from California to New Jersey where the plaintiff filed a substantially similar lawsuit in California after receiving an unfavorable ruling in New Jersey).

For purposes of the instant controversy between SDC and Candid, SDC's chosen and preferred forum prior to receiving that unfavorable ruling on the '522 patent was the District of Delaware. SDC expressed its intent to assert the '599 patent in Delaware. SDC affirmatively and unequivocally put the '599 patent at issue in *Delaware Case I* in arguing against abstractness and in support of its preliminary injunction. SDC is a Tennessee company with its principal place of business in Nashville, Tennessee, not Texas. Candid is a Delaware corporation with its principal place of business in New York, again, not Texas. The only reasonable inference for

filing this instant action in this District is an attempt to relitigate issues already decided by the Delaware Court, and to avoid the District of Delaware's invalidity ruling.

For at least these reasons, even assuming *arguendo* that the instant action is considered the first-filed case, the factual circumstances warrant departing from the general first-filed principles and support a transfer to the District of Delaware in the interests of judicial efficiency and justice.

### III. CONCLUSION

For the foregoing reasons, in the event the Court does not grant Candid's motion to dismiss based on collateral estoppel, Candid respectfully asks this Court to transfer this case to the District of Delaware under first-filed principles and in the interests of justice.

Dated: February 26, 2021

Respectfully submitted,

*/s/ Michael P. Sandonato (w/permission Wesley Hill)*
Michael P. Sandonato (to be admitted *pro hac vice*)
Venable LLP
1270 Avenue of the Americas
New York, New York 10104
(212) 307-5500 (telephone)
(212) 307-5598 (facsimile)
mpsandonato@venable.com

Wesley Hill (Texas Bar. No. 24032294)
Andrea L. Fair (Texas Bar. No. 24078488)
Ward, Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (main line)
(903) 757-2323 (facsimile)
wh@wsfirm.com
andrea@wsfirm.com

*Attorneys for Defendant Candid Care Co.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on February 26, 2021.

/s/ *Wesley Hill*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the conference required by Local Rule CV 7(i) occurred between counsel on February 26, 2021. The parties disagree regarding the appropriateness of the requested relief and, therefore, the motion is opposed.

/s/ *Wesley Hill*